**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Johnny JACKSON, Defendant–
Appellant.**

**No. 01–1014.**

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 7, 2001.

Decided Sept. 14, 2001.

Before Hon. COFFEY, Hon. KANNE, Hon. WILLIAMS, Circuit Judges.

### ORDER

Johnny Jackson, a member of the Gangster Disciples, was convicted after a jury trial of narcotics-related offenses and sentenced to 100 years in prison. On appeal Jackson asks us to reconsider the holding in *United States v. Jackson*, 207 F.3d 910 (7th Cir.), *vacated and remanded on other grounds*, 531 U.S. 953, 121 S.Ct. 376, 148 L.Ed.2d 290 (2000), *reinstated*, 236 F.3d 886 (7th Cir.2001), that the government's wiretap evidence was admissible despite a failure to seal the audiotapes promptly as required by 18 U.S.C. § 2518(8)(a). Twice this court has refused identical requests, *see United States v. Hoover*, 246 F.3d 1054, 1057 (7th Cir.2001); *United States v. Wilson*, 237 F.3d 827, 831 (7th Cir.2001), and Jackson advances no new or persuasive argument. We affirm.

### I. Background

The facts surrounding the Gangster Disciples' activities are familiar to this court, *see Wilson*, 237 F.3d at 830, and are set forth only as necessary to resolve Jackson's appeal.[1] The Gangster Disciples is a 6,000 member Chicago gang engaged in drug trafficking. Larry Hoover held the top rank of "chairman of the board" in the gang's hierarchy; below him the remaining "board members" exercised control over the entire gang; and below them were "governors" who controlled geographic territories. "Regents," "coordinators," and "foot soldiers" operated below the governors, carrying out the daily distribution of drugs on the street. In 1992, Jackson, known on the street as "Crusher," was the assistant governor of "the low end" area around South State and 39th streets. By 1994, Jackson had become a member of the board of directors, a position he held until August 1995, when a grand jury first indicted him and several other gang members. Jackson fled immediately and remained a fugitive until his arrest in Wisconsin in January 2000. While Jackson was a fugitive, his co-defendants, including Hoover, were tried and convicted and their convictions were affirmed on appeal. *See Hoover*, 246 F.3d at 1056.

---

1. General overviews of the Gangster Disciples' conspiracy may be found in *United States v. Smith,* 223 F.3d 554 (7th Cir.2000), and in this court's initial *Jackson* opinion.

The government began investigating the Gangster Disciples in 1989. In 1993 the government obtained a court order pursuant to 18 U.S.C. § 2518(3) authorizing wiretap surveillance of conversations at the Vienna Correctional Center between Hoover and visitors who unwittingly wore hidden transmitters inside their visitors' badges. The government recorded 136 tapes (the "Vienna tapes") of Hoover's conversations with visitors, including Jackson, who visited Hoover at Vienna 173 times between 1991 and 1995. The government later obtained wiretap authorizations for telephones at Shrimp on the Nine restaurant, the home telephone of Gangster Disciple Cedric Parks, and a cellular telephone used by board member Darryl Johnson. The tapes of these intercepted communications became the "linchpin" of the case against the Gangster Disciples. *Jackson*, 207 F.3d at 918; *see also Hoover*, 246 F.3d at 1057 (referring to the tapes of intercepted conversations as the government's "best evidence").

Before his trial Jackson moved to suppress the wiretap evidence and dismiss the indictment on several grounds, including the two raised on appeal that the government: (1) failed to seal the wiretap evidence immediately as required by 18 U.S.C. § 2518(8)(a) and did not offer an objectively reasonable excuse for the delay; and (2) failed to establish in its wiretap applications a showing of necessity as required by 18 U.S.C. § 2518(1)(c). The district court denied the motion, just as it had denied identical motions previously made by Jackson's co-defendants. After a one-week trial the jury found Jackson guilty of conspiracy, 21 U.S.C. § 846, possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), and 15 counts of using telephones in furtherance of the conspiracy, 21 U.S.C. § 843(b), and acquitted him on nine other counts. The court denied Jackson's post-

trial renewal of his motion to suppress and sentenced him to consecutive prison terms totaling 100 years. Jackson filed a timely notice of appeal and challenges only the denial of his motion to suppress the wiretap evidence.

## II. Analysis

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 sets forth the requirements for the issuance of wiretap authorization. *See* 18 U.S.C. § 2510 *et seq.* Among the information the government must set forth in the wiretap application is "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Wiretap authorizations generally expire after 30 days unless the government obtains an extension after making the same showing required for the initial authorization. *See* 18 U.S.C. § 2518(5). "Immediately" following the final expiration of the order, the government must make available to the issuing judge the recordings of the intercepted communications and seal them according to his or her directions. 18 U.S.C. § 2518(8)(a). If the government fails to comply with this provision or cannot provide a "satisfactory explanation" for noncompliance or for a delay in sealing, the evidence is inadmissible. *Id.; see United States v. Ojeda Rios*, 495 U.S. 257, 260, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990) (explaining that § 2518(8)(a) has an explicit exclusionary remedy for noncompliance with the sealing requirement); *Jackson*, 207 F.3d at 915 (same). A satisfactory explanation is one that is "objectively reasonable." *Jackson*, 207 F.3d at 916.

### A. The Sealing Requirement

In *Jackson* this court addressed the delayed sealing of the tapes of communica-

tions intercepted during the Gangster Disciples investigation. The Vienna tapes were not sealed until 32 days after the expiration of the wiretap authorization, a delay this court found "much too long to qualify as an immediate sealing." *Jackson,* 207 F.3d at 915. Accordingly, the court considered whether the government's explanation for the delay was adequate. *Id.* Two weeks before the wiretap authorization was to expire on January 2, 1994, Hoover discovered the microphone, interrupting the surveillance and requiring the government to begin using a smaller, less discoverable microphone. *Id.* The government's first reason for not sealing the existing tapes was because it thought it needed access to these tapes to compare their acoustic quality to the quality of tapes made using the new device. *Id.* This reason alone, the *Jackson* court found, was not enough because Hoover's conversations had been recorded in triplicate, so the government could have sealed one set while using another set to compare acoustic quality. *Id.* at 916. Nor did the court find adequate the explanation set forth in the affidavit of the Assistant United States Attorney in charge of the investigation, Ronald Safer, who said that he thought he had an "automatic 30 days" to seal the tapes and was unaware of the multiple copies of the tapes. *Id.* at 917–18. The court did find satisfactory, however, a reason not in Safer's affidavit but set forth in the government's brief and relied on by the district court in ruling that the tapes were admissible at trial: that the delay resulted from the government's expectation that the new, smaller wiretap device would be operational sooner and, expecting to file a prompt motion for an extension of the authorization to use the new device, the government postponed submitting the tapes for sealing until it became apparent, after 32 days, that the new device would not be ready in the near future. *Id.* at

918. This "failure of communication" between the government's technicians about the availability of the new device was not, the court found, "so wanton a blunder as not to constitute a (barely) satisfactory explanation." *Id.*

We denied rehearing in *Jackson* and no judge found rehearing *en banc* warranted. *See Wilson,* 237 F.3d at 831. Although the Supreme Court vacated the judgment and remanded for reconsideration of Harold Jackson's sentence in light of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), we ultimately reinstated our previous judgment, *United States v. Jackson,* 236 F.3d 886, 888 (7th Cir.2001) *(per curiam ).* *See Hoover,* 246 F.3d at 1057 (noting that petition for certiorari was denied with respect to wiretap issues); *Wilson,* 237 F.3d at 831 (noting that Supreme Court's remand left unaffected this court's ruling with regard to issues other than *Apprendi*). Subsequently, other Gangster Disciple defendants have urged us to reconsider *Jackson's* holding that the government provided a satisfactory explanation for the delay in sealing the Vienna tapes, and twice we have refused to do so on the basis of *stare decisis. See Hoover,* 246 F.3d at 1057; *Wilson,* 237 F.3d at 831.

Notwithstanding *Hoover* and *Wilson,* Jackson implores us to reconsider *Jackson* and rule the wiretap evidence inadmissible because, in his view, Safer's explanation was unsatisfactory and the one accepted by the *Jackson* court was waived by the government. Pointing to Judge Rovner's concurring opinion in *Hoover,* in which she voiced her concern about the *Jackson* court's basis for excusing the delay in sealing the Vienna tapes, *see Hoover,* 246 F.3d at 1063 (Rovner, J., concurring), Jackson asks us to revisit the issue in the interest of justice. In her concurrence, Judge Rovner accepted *Jackson* as "the law of this

circuit *vis á vis* the admissibility of the Vienna tapes," but found "perplexing" the court's "decision to accept as a satisfactory explanation" a reason that both the district court and the government advanced without any support in the Safer affidavit or elsewhere in the district court record. *Hoover,* 246 F.3d at 1064. Apart from Judge Rovner's concurrence, however, Jackson offers nothing more than a rehashing of arguments previously considered and rejected by this court and citations to authority from other circuits.

As we have recognized repeatedly, *Jackson* is the law of this circuit with regard to the adequacy of the government's explanation for the delay in sealing the Vienna tapes. *See Hoover,* 246 F.3d at 1057; *id.* at 1065 (Rovner, J., concurring); *Wilson,* 237 F.3d at 831. Rehearing and rehearing *en banc* was denied in *Hoover, Wilson,* and *Jackson,* and the Supreme Court denied the petition for certiorari in *Jackson* with regard to the wiretap issues. Because we have held that the Vienna tapes were properly admitted in three other trials and because Jackson offers no new argument why the government's explanation for the delay in sealing the tapes renders them inadmissible, we decline Jackson's invitation to reconsider the law of the circuit on the admissibility of the Vienna tapes. *See Hoover,* 246 F.3d at 1057 (finding that it would be "inappropriate for a third panel to offer an independent view as if the matter were presented for the first time").

B. Showing of Necessity in Wiretap Applications

As an alternative ground for suppression of the wiretap evidence, Jackson argues that the wiretap applications failed to demonstrate necessity for the wiretap authorization required by 18 U.S.C. § 2518(1)(c). While conceding that the affidavits in support of the wiretap applications described the government's efforts in employing traditional investigative techniques, why these procedures were inadequate, and why other non-wiretap procedures were not feasible, Jackson contends that the affidavits were "deliberately misleading" as to the "breadth and scope" of the investigative techniques employed, and that the tapes thus should have been suppressed.

In *Hoover,* we rejected as "weak" this very argument about the showing of necessity. *See* 246 F.3d at 1057. In support of his argument that the government's "pattern of omission" misled the judge issuing the wiretap authorizations, Jackson points to the same alleged "misrepresentations" and cites the same Ninth Circuit authority raised in the appellants' consolidated brief in *Hoover.*[2] A comparison of the two briefs reveals that Jackson's argument that the government failed to comply with the necessity requirement in 18 U.S.C. § 2518(1)(c) is no more persuasive than the argument raised by his co-defendants and rejected by this court in *Hoover.* Accordingly, we reject Jackson's argument for reversal on this ground as well.

### III. Conclusion

Jackson's appeal raises only arguments that at least one prior panel of this court has already considered and rejected, that no member of this court has voted to rehear *en banc,* and that the Supreme Court has declined to review. Accordingly, Jackson's conviction is

AFFIRMED.

---

2. Jackson cites *United States v. Carneiro,* 861 F.2d 1171 (9th Cir.1988), and *United States v. Simpson,* 813 F.2d 1462 (9th Cir.1987), the same two cases quoted by his co-defendants in their consolidated brief in *United States v. Hoover,* 246 F.3d 1054.